OPINION OF THE COURT
Charles J. Heffernan, Jr., J.
Defendants stand accused of various offenses arising from an alleged riot in Tompkins Square Park (the park) in New York County during the evening of May 1, 1990, and early *621 morning of the following day. By notice of motion dated April 9, 1991 and affirmations of Assistant District Attorney Daniel S. Connolly, dated April 9, 1991 and May 3, 1991 (Connolly I and Connolly II), the People have moved for consolidation of the above eight informations.
THE POSITIONS OF THE PARTIES
The principal legal ground for the motion is that "all the offenses charged are based upon the same criminal transaction” (CPL 200.40 [1] [c]) (Connolly I) as defined in CPL 40.10, thus warranting consolidation under CPL 200.40 (2) and (1) (c).
The theory of the People’s case is that all of the offenses charged are part of a lengthy series of unlawful responses to a single act by municipal authorities, as detailed below. The People assert that this criminal transaction, albeit protracted, continued unabated for a period of more than four hours, from approximately 9:05 p.m. on May 1, 1990 until sometime after 1:30 a.m. the next morning.
Defendants Gerald Wade and Paul Shay consent to the motion. The remaining six defendants oppose the motion on various grounds, inter alia:
(1) CPL 40.10 (2) (b) and 200.40 (1) are inapplicable because (a) the incidents in question, occurring in the same general vicinity over a four-hour period, are not part of the same criminal transaction, and (b) the defendants lacked a shared purpose and intent;
(2) there are no allegations in the pleading that the defendant acted with another person; the People need not prove the acts of the other defendants at each trial;
(3) judicial economy would not be furthered by consolidation;
(4) police witnesses are not needed at each trial as claimed by the prosecution;
(5) consolidation would (a) prejudice defendants’ possible use of antagonistic defenses; (b) compromise their Fifth Amendment privilege against self-incrimination and Sixth Amendment right to compulsory process and confrontation;
(6) the mere association of each defendant with numerous other defendants is prejudicial in and of itself.
THE PEOPLE’S THEORY OF PROSECUTION
During oral argument, the People made an extended proffer *622 of their version of the events of the charged riot. It is necessary to detail the People’s contentions in order to properly evaluate the merits of their motion.
According to the People, a four-day "Resist to Exist” celebration/ demonstration was held in Tompkins Square Park from April 28 through May 1, 1990. Part of the event included a live music presentation at the park bandshell, authorized by a series of daily municipal sound permits. The permit for the final day, May 1, 1990, expired at 8:00 p.m. At the request of an event organizer, the permit was extended by the Police and Parks Departments for one hour, but was not reextended when it expired at 9:00 p.m. Denial of a second extension set in motion a series of actions which included the setting of fires in the public street, destruction of property, assaultive conduct and other manifestations of civil disorder, detailed presently.
At 9:00 p.m., the band continued playing beyond the permit deadline. When police attempted to speak to the event organizer who had obtained the one-hour extension, she refused to do so. Instead, she then went on stage and used a microphone to make statements to the crowd that "The police are going to take our park” and "These are the pigs”, among other comments.
At 9:05 p.m. the Commanding Officer of the 9th Precinct ordered police officers to approach the stage in order to turn off the electric power. When six police and park officers reached the stage, they became the target of thrown rocks and bottles from the crowd, causing the officers to fall injured on the stage. The barrage of missiles continued for 20 to 25 minutes, now including bricks as well. Emergency police reinforcements later arrived at the park, which contained a crowd of some 350 to 400 people, of whom 200 were in front of the bandshell. The emergency unit created an aisle through which the injured officers were evacuated. Three officers were seriously injured, including one who has become blind in one eye, and another who has ended his police career.
As detailed in the second Connolly affirmation, the People allege that the criminal actions of two defendants, Gerald Wade and Randy Stokes, began 30 minutes after the music stopped.[1]
*623 At approximately 9:45 p.m., after the injured officers were removed, the police vacated the park and a situation of "chaos” ensued, as park fences and structures were knocked down by the crowd, park benches destroyed, and bottles continued to be thrown toward the stage. A city-wide "1013” or "May Day” signal was broadcast on police channels, as a temporary command post was set up on 14th Street, away from the park.
At about 10:30 p.m. a crowd of some 100, led by defendant Gerald Wade, left the park and ignited a fire in the public street at Avenue A and 9th Street, using wood from the temporary structures torn down by the crowd in the park, as well as other combustibles. The fire in the street raged for the next 60 to 75 minutes, as more park structures were leveled and their wood added to the pyre. Aerosol cans and other items were also hurled into the fire.
At approximately 11:45 p.m., some 100 people remained within the park, doing various forms of property damage. Police remained outside the park. The Fire and Police Departments then determined that the fire had to be extinguished because of its increasing danger. As police escorted firefighters to the fire scene, several attempts were made by the crowd to deny the firefighters access to the fire, and several arrests were made for those acts.
At approximately midnight, as the Fire Department began to put out the fire on the street at Avenue A and 9th Street, a crowd of 100 people began chanting "The Christadora”, referring to a renovated condominium building across the park at Avenue B and 8th Street that had become a protest target. A crowd of some 150 to 200 people ran through the park, arriving at Avenue B and 9th Street, where a second fire was started.
At about 12:30 a.m., the Police and Fire Departments began to put out that fire. As they did so, the crowd hurled bottles at the Christadora and at the police stationed there.
The remaining six defendants are charged with conduct occurring during the period from 11:15 p.m. on May 1, to 1:30 a.m. on May 2.
*624 After a final arrest of another protestor at 1:40 a.m., the police regained control of the park at 2:05 a.m. and remained there until 7:00 a.m.
discussion
Determination of this motion begins with CPL 200.40 (2) (made applicable to informations by CPL 100.45 [1]) which states in relevant part: "When two or more defendants are charged in separate indictments with an offense or offenses but could have been so charged in a single indictment under subdivision one above, the court may, upon application of the people, order that such indictments be consolidated and the charges be heard in a single trial”.
CPL 200.40 (1) lists two grounds which would authorize joinder under the present circumstances:
"Two or more defendants may be jointly charged in a single indictment provided that * * *
"(b) all the offenses charged are based upon a common scheme or plan; or
"(c) all the offenses charged are based upon the same criminal transaction as that term is defined in subdivision two of section 40.10”.
The People do not contend that the offenses here at issue were part of a common scheme or plan, but rather, that they are based upon the same criminal transaction.
CPL 40.10 (2) defines "criminal transaction” as "conduct which establishes at least one offense, and which is comprised of two or more or a group of acts either (a) so closely related and connected in point of time and circumstance of commission as to constitute a single criminal incident, or (b) so closely related in criminal purpose or objective as to constitute elements or integral parts of a single criminal venture.”
The People allege that the instant prosecutions satisfy paragraph (a) of CPL 40.10 (2) in that they are so closely related and connected in time and circumstance of commission as to constitute a single criminal incident. The People do not suggest that the acts here alleged were so joined by criminal purpose or objective as to constitute integral parts of a single criminal venture.
The core question, then, becomes this: Do the eight prosecutions at bar constitute a single criminal incident by virtue of their time and circumstance connection?
*625 There is sparse authority on the question at bar. Neither party has cited a case which has decided a motion by the People to consolidate prosecutions in a factual context even proximately analogous to the instant situation.[2] Nor has the court’s research unearthed such precedent. Such absence is perhaps attributable to the fact that litigation of this nature in the relatively modern genre of demonstration-riot-protest cases is infrequent in general, or results in resolution without substantial pretrial motion practice. Also, most of the interpretation of CPL 40.10 (2) occurs within the context of challenges to successive prosecutions of the same defendant under CPL 40.20 ("Previous prosecution; when a bar to second prosecution”), a situation not present here. Whatever the reason, the question presented here stands on an uncommon factual and legal footing, so that available decisional law is of but limited value in the task of interpreting the governing statutes.
The parties agree that People v Griffin (137 AD2d 558 [2d Dept 1988], lv denied 70 NY2d 1006 [1988]) offers helpful guidance as to whether or not multiple acts are part of the same criminal transaction. Under Griffin, the trier of fact must look at "the nature of the crime, as well as the underlying facts (i.e., victim, time, place and date)”. (Supra, at 559.) While Griffin involved almost simultaneous conduct, there is no requirement that components of a criminal transaction be closely contemporaneous. Nor does governing statutory or decisional law require either a specific duration or identical location before separate charges can qualify as a single criminal transaction.
Defendants argue that distinct acts occurred at separate *626 locations over a four-hour period, and that the incidents in question are not so closely related and connected as required by CPL 40.10 (2) (a). Citing Griffin (supra), they submit that in the absence of simultaneous or almost-simultaneous conduct, the People must proceed under a conspiracy theory to be within the purview of CPL 40.10; and that if this provision were applicable, it would be "apparent” from the factual allegations. That is simply not the holding of Griffin. The defendants also contend, based upon unspecified news reports allegedly seen by defense counsel, that at approximately 11 o’clock the turmoil in the park area ceased. Defendants thus urge that this hiatus does not merely reflect the withdrawal of the police from the park but is a further indication that these charges do not arise from a single criminal transaction.
The defense has not submitted any documentation to support the allegation that the rioting stopped and later re-commenced. Moreover, a brief halt in the turmoil would not have the effect, in the instant alleged circumstances, of partitioning the charged conduct into a series of legally unrelated mini-riots.
People v Sharpton (141 Misc 2d 322 [Crim Ct, Kings County 1988]) is a case with some factual similarity to the case at bar. There, 18 defendants sought consolidation of individual cases emanating from "Day of Outrage” demonstrations at a subway station. The defendants, who were charged with committing the same three crimes, sought consolidation of their cases. The People opposed the motion, contending that although the defendants acted together to disrupt the subway system, the criminal acts were independently committed. Accepting that premise, the court denied consolidation under CPL 200.40 (2), but granted it pursuant to CPL 200.20 (4), which permits a court, upon motion of either party, to consolidate indictments charging joinable offenses that are based upon the same criminal transaction.
Sharpton (supra) is also dissimilar to this prosecution, in that it was an announced and planned demonstration, as opposed to the events at bar, which bear no certain proof of preplanning. Too, as noted above, defendants there sought consolidation, while defendants here oppose that relief. Finally, the Sharpton defendants were identically charged, a situation absent here.
*627 Despite those differences, Sharpton (supra) is informative because it broadly applied the Griffin guidelines for determining a single criminal transaction. Although the court required some common thread connecting the defendants, it did not require either that the criminal conduct occur simultaneously, or that the conduct of each defendant be the same. (See also, People v Israel, 148 AD2d 637 [2d Dept 1989], affd 75 NY2d 972 [1990] [crimes occurring on two separate dates, one week apart, can be the same criminal transaction].)
Applying appropriate legal principles — and common sense— to the facts at bar, it would seem that to conclude that the offenses here at issue were not components of a single criminal transaction would, at best, be to fancify reality. While recognizing that they are as yet unproven, the allegations of criminal conduct by each of the instant defendants advanced by the People suggest with compelling logic that the activities of the defendants formed integral links in the broader collective — and allegedly criminal — response of hundreds of people to a decision by city authorities that they found unpalatable— i.e., the decision to halt the music at the bandshell. Put another way, the People’s claim is that the cases here are components of a lengthy riot in and around Tompkins Square Park. Indeed, all but one of the eight defendants at bar are charged with the crime of rioting.
It is impossible to determine on the basis of the submissions and pleadings attending this motion whether the actions attributed to the defendants were the product of a previously orchestrated plan to wreak disorder or mayhem in Tompkins Square Park. Moreover, it is legally unnecessary to do so, as the People do not allege either that the actions at bar are based upon a common scheme or plan or are related by common criminal purpose or objective. Nor, indeed, does the nature of rioting generally lend itself to such precise parsing.
The accusations here are that a large group of people, including all eight defendants at bar, engaged in a continuous pattern of criminal conduct within a limited geographic area, Tompkins Square Park, during a period of some 4 Vz hours within a single evening, prompted by a common motivation of protest or resistance. That the charged criminal conduct is not identical for each defendant does not, as noted, preclude consolidation.
The allegations here appear to fit comfortably within the *628 guidelines announced by Griffin (supra) for determining whether individual acts are part of the same criminal transaction: (1) the nature of the crime; and (2) the underlying facts.
The principal crime charged here is riot in the second degree. Reduced to its essence, that crime is defined as tumultuous and violent conduct which either intentionally or recklessly causes or creates a grave risk of causing public alarm and which is done simultaneously with four or more other persons (Penal Law § 240.05). Such conduct is regularly, if not necessarily, fluid. Clearly, the allegations here are of ongoing, wanton criminal behavior by hundreds of people, including the defendants. The allegations, as reflected in the individual informations, are particular and illustrative.[3]
The second Griffin consideration — the underlying facts (victim, time, place and date) is also satisfied. The offenses at bar are alleged to have occurred within a 4 Vi-hour period of tumult in and directly adjacent to a single city park of limited size. The principal named "victims”, perhaps better termed targets, of the instant offenses can be accurately described genetically: city officials and public property. According to the People’s theory of the case, the events of the evening were dynamic, filled with continuous parrying between the authorities and the crowd (including the defendants). Action and reaction are charged, as evidenced by the contentions of the bottle-throwing at the bandshell, the evacuation of injured officers and police withdrawal from the park, the setting and ending of fires in two separate locations, as well as alleged property damage and assaultive conduct, detailed above.
In short, any balanced, dispassionate assessment of the offenses here charged must result in the determination that they are not disparate, unrelated incidents, but rather fall sensibly together as so closely related in time and circumstance as to constitute a single criminal transaction.
*629 The court has considered the other arguments raised by defendants and finds them without merit.
CONCLUSIONS
For the foregoing reasons, the People’s motion pursuant to CPL 200.40 to consolidate the eight informations is granted.

. Randy Stokes is charged with offenses (riot in the second degree [Penal Law § 240.05], unlawful assembly [Penal Law § 240.10], resisting arrest [Penal Law § 205.30] and disorderly conduct [Penal Law § 240.20]) *623 occurring in the center of the park near the bandshell at 9:30 p.m. on May 1, 1990 and at 1:30 a.m. on May 2, 1990. Gerald Wade is charged with offenses (riot in the second degree [Penal Law § 240.05], unlawful assembly [Penal Law § 240.10], inciting to riot [Penal Law §240.08] and disorderly conduct [Penal Law § 240.20]) occurring at 9th Street and Avenue A, and throughout Tompkins Square Park spanning the same four-hour period.

. People v Penn (48 Misc 2d 634 [App Term, 1st Dept 1964]) is factually comparable to — but also distinct from — the instant case. There 11 defendants were convicted of disorderly conduct arising from a protest of allegedly discriminating hiring practices at a construction site. The case involved two incidents which occurred one hour apart. In the first incident, four defendants sat down in front of a fence gate as a cement mixing truck approached the gate. They were arrested for refusing a police request to leave. In the second incident, seven defendants were arrested for three different groups of acts: Three defendants sat or lay in a private driveway leading to the fence; two others sat in front of a cement truck on the street; and two others sat in front of a second cement truck. There, unlike here, the defendants stipulated with the People to hold a joint trial. The court affirmed the convictions over the dissenting opinion (Hofstadter, J.) which would have reversed despite this stipulation, for the reason that "misjoinder was so highly prejudicial and abortive of a fair trial that the interests of justice require reversal”. (Supra, at 644.)

. The accusations in the original informations at bar include the following, among others: acting with more than 100 other people while throwing glass bottles at police and park officers (all defendants); igniting a fire on 9th Street and Avenue A (Gerald Wade); physically assaulting a police officer by knocking him off his scooter and continuing to punch the police officer while he lay on the ground (Paul Shay); breaking park benches and starting fires (Steven Englander); repeatedly striking a police officer (Csaba Puski).